Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 CR 251-1,2,3 | **DATE** | 6/18/2004 |
| **CASE TITLE** | USA vs. Saad Al Dhufari, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motions to dismiss the indictment are denied.

*(signature)*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUN 21 2004 date docketed | 46 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TH | courtroom deputy's initials | 2004 JUN 18 PM 3:01 U.S. DISTRICT COURT date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 CR 0251 |
| ) | |
| SAAD AL DHUFARI, ) | |
| KHALED AL HECIMI, and ) | |
| ALBERT SIMONIAN, ) | |
| ) | |
| Defendants. ) | |

DOCKETED JUN 2 1 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

On March 4, 2004, a grand jury indicted Defendants Saad Al Dhufari, Khaled Al Hecimi, and Albert Simonian, for mail fraud in violation of 18 U.S.C. §§ 1341 and 1342. The indictment charged Defendants with a scheme to defraud a car rental company through a system of staged accidents, invented injuries, and fraudulent claims. Defendants Al Dhufari and Al Hecimi moved to dismiss the indictment against them for failure to prosecute within the statute of limitations. Defendant Albert Simonian filed a separate motion to dismiss on essentially the same grounds.

## FACTUAL BACKGROUND

The indictment alleges the following facts.[1] Defendants took part in a scheme to defraud National Car Rental Systems, Inc. ("National") by staging accidents and making fraudulent

---

[1] In considering a motion to dismiss an indictment, all facts in the indictment are taken as true and viewed in the light most favorable to the government. *U.S. v. McGowan*, No. 03 CR 350, 2004 WL 909745, *2 (N.D. Ill., April 23, 2004) (citing *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999)).

46

claims on National's insurance coverage. As part of the alleged scheme, Simonian rented a vehicle on September 25, 1997 from a National rental branch in downtown Chicago and obtained the "loss damage waiver/liability insurance coverage" offered by National. (R. 1-1, Indictment ¶ 6.) On September 28, 1997, Defendants allegedly staged an accident between the vehicle rented and driven by Simonian and a vehicle driven by Saad Al Dhufari. Khaled Al Hecimi and an unnamed person (the "Passenger") rode as passengers in the two vehicles. On the same day, Al Dhufari and Simonian filed accident reports with the Chicago Police Department representing the staged event as an accidental traffic collision. On September 30, 1997, Al Dhufari and Al Hecimi met with an attorney using the name James L. Kent in order to obtain money from National for property damage and personal injuries in connection with the staged accident. Al Dhufari and Al Hecimi provided Kent with copies of the police reports they had filed, and signed forms purporting to retain Kent to pursue claims against National in connection with their imaginary injuries. Unknown to Defendants, "James L. Kent" was actually an FBI agent working undercover to gather evidence in connection with staged automobile accident insurance fraud activity.

Al Dhufari, Al Hecimi, and the Passenger also visited medical clinics and doctors to complain of fake injuries resulting from the staged accident. Al Dhufari, Al Hecimi, and the Passenger filed claims with National for personal injuries in the amount of $36,720 and property damage in the amount of $2,187.92. In settlement of the putative property damage claim, National issued a check in the amount of $2,187.92 payable to Al Dhufari on or about December 12, 1997.

On April 8, 1999, National mailed letters to Al Dhufari, Al Hecimi, and the Passenger

requesting that they contact National if they were still pursuing claims for their alleged injuries. On or about April 12, 1999, National sent an additional letter to the Passenger requesting that he contact National if he was still pursuing a claim for his alleged injuries. On May 4, 2004, the Grand Jury indicted Defendants for violations of 18 U.S.C. §§ 1341 and 1342.

## ANALYSIS

### I. Legal Standard

In evaluating a motion to dismiss an indictment, a court does not test the strength of the government's case, but instead determines whether the allegations are sufficient to charge an offense. *United States v. Sampson*, 371 U.S. 75, 78-79, 83 S. Ct. 173, 174-75, 9 L. Ed. 2d 136 (1962); *U.S. v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988). "To be sufficient, an indictment must fulfill three distinct functions. First, the indictment must state all of the elements of the crime charged; second, it must adequately apprise the defendant of the nature of the charges so that he may prepare a defense; and third, it must allow the defendant to plead the judgment as a bar to any future prosecutions for the same offense." *U.S. v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000) (citing Fed. R. Crim. P. 7(c)(1)).

The elements of mail fraud are: "(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme." *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 299 (7th Cir. 2003) (citing *United States v. Walker*, 9 F.3d 1245, 1249 (7th Cir. 1993)).

### II. Statute of Limitations

Defendants argue that the indictment is barred by the statute of limitations because the government has not alleged any overt actions by Defendants within the statutory period. Thus,

Defendants contend that the government has not sufficiently alleged each element of a mail fraud offense.

The relevant statute of limitations states that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282. In this case, the grand jury returned the indictment on March 4, 2004. The relevant date for the statute of limitations, therefore, was five years earlier: March 4, 1999. The Court must determine if the government has alleged activity after March 4, 1999 that supports the claims in the indictment.

Defendants correctly note that the only activities within the statutory period alleged in the indictment are mailings dated April 1999 from National to Defendants.[2] Defendants argue that these mailings are insufficient to confer jurisdiction on this Court because the Defendants did not send them. Rather, the mailings were sent by the victim, National, as follow-up communication with the claimants. Contending that such routine mailings cannot constitute a continuing violation, Defendants argue that "the statute of limitations will never run as long as computers spew out periodic requests for additional information."[3]

Defendants take an unnecessarily narrow view of the alleged scheme against National. Even if no Defendant responded to the routine communications from National inquiring about their allegedly fraudulent claim, National continued to send such mailings to Defendants as a

---

[2] The April 1999 letters were from National to Al Dhufari, Al Hecimi, and the Passenger. The indictment does not allege that Defendant Albert Simonian received a letter in 1999.

[3] The letters in this case appear to be hand-signed, and refer to the imminent closing of the case.

4

direct result of Defendants' scheme.[4] Viewed in the light most favorable to the government, these mailings represent activities that occurred in furtherance of the alleged scheme: defrauding the rental company in connection with staged accidents and fabricated claims. This conclusion is bolstered by the common-sense fact that Defendants knew or should have known that their activities would spawn follow-up communication on the part of their intended victim. *U.S. v. Tadros*, 310 F.3d 999, 1007 n. 4 (7th Cir. 2002) ("The government need only show that the defendant acted with knowledge that the use of the wires or mail could be reasonably foreseen or would follow in the ordinary course of business.") (citing *American Auto. Accessories, Inc. v. Fishman*, 175 F.3d 534, 542 (7th Cir. 1999)). "Such communications can be said to be incident to an essential part of the scheme. Courts must consider the full scope of the scheme when determining the sufficiency of the mailing element." *U.S. v. Koen*, 982 F.2d 1101, 1108 (7th Cir. 1992) (internal citations and quotations omitted). At most, Defendants' argument that one-sided communications from National to Defendants did not further Defendants' scheme poses a question of fact. As stated before, ruling on a motion to dismiss, the Court does not test the strength of the government's case, but rather the sufficiency of the allegations in the indictment. The indictment sufficiently alleges that Defendants caused mail communications in furtherance of a scheme to defraud National.

Defendants further argue that because they made no overt act in furtherance of the alleged scheme within the statutory period, the "conspiracy should be considered abandoned." (R. 39-1, Simonian's Reply, p. 4.) This is also a question of fact not appropriately addressed by a motion

---

[4] Because this scheme included Simonian, the Court does not differentiate among the Defendants according to who received a letter in April 1999.

5

to dismiss. As the indictment stands, the government has sufficiently alleged that Defendants caused mail communications in furtherance of a scheme to defraud National.

Because the mailings that occurred in April 1999 were — for the purposes of this motion to dismiss — in furtherance of Defendants' scheme, the mailings are sufficient to support the March 4, 2004 indictment. These mailings fall within the five-year statute of limitations. Accordingly, the Court denies the motion to dismiss brought by Defendants Al Dhufari and Al Hecimi. Similarly, the Court denies Defendant Simonian's motion to dismiss.

## CONCLUSION

Because the government has sufficiently alleged acts in furtherance of Defendants' violation of 18 U.S.C. §§ 1341 and 1342 within the statutory period, Defendants' motions to dismiss are denied.

Dated: June 18, 2004

ENTERED

AMY J. ST. EVE
United States District Judge